# CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY *v.* MILLER.

## ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 17. Argued March 8, 1912; reargued October 22, 1912.—Decided January 6, 1913.

*Adams Express Company* v. *Croninger, ante,* p. 491, followed to the effect that the Carmack Amendment of the Hepburn Act of June 29, 1906, regulating liability of interstate carriers, superseded all state regulations on the same subject.

85 Nebraska, 458, reversed.

THE facts, which involve the validity under the Carmack Amendment of schedules of rates based upon value and the extent of the liability of the carrier on bills of lading, are stated in the opinion.

*Mr. Arthur R. Wells* and *Mr. Robert B. Scott* for plaintiff in error.

*Mr. Edwin E. Squires* and *Mr. H. M. Sullivan,* with whom *Mr. Norris Brown* was on the brief, for defendant in error:

The Carmack Amendment to the Hepburn Act of June 29, 1906, does not abrogate the Iowa rule that the company can in no way limit its liability; but on the contrary incorporates that rule into the body of the Federal

law so that the. Federal statute forbids the company in this case to limit its liability.

. The Iowa state court has · held that the Carmack Amendment did not contravene the local Iowa state rule. *Cramer* v. *Railway Co.*, 133 N. W. Rep. (Ia.) 387; *Betus* v. *C., B. & Q. R. R. Co.*, 129 N. W. Rep. (Ia.) 962; *Winn* v. *Am. Ex. Co.*, 128 N. W. Rep. (Ia.) 663. See also *Latta* v. *Railway Co.*, 172 Fed. Rep. 850; *Miller* v. *C., B. & Q. Ry. Co.*, 85 Nebraska, 458; *T. & S. F. Ry. Co.* v. *Rodgers*, 113 Pac. Rep. 80; *Railway Co.* v. *Pew*, 64 S. E. Rep. 35.

As a matter of fact the Carmack Amendment by necessary construction of language brings the Federal statutes into perfect accord with the Iowa and Nebraska rule, and expressly forbids a railway company from limiting its liability for its own negligence.

This statute clearly deals only with loss "caused" by the carrier, and the carrier is clearly made liable for loss due to its negligence, which is the situation in the case at bar.

The use of the word "any" is of paramount importance. "Any" in this context means "all." 1 Words and Phrases, 421; *Monongahela Nav. Co.* v. *Coon*, 47 Am. Dec. 474; 2 Cyc. 472 (note 21); *Jones* v. *Whitworth*, 30 S. W. Rep. (Tenn.) 736; *L. N. R. Co.* v. *Mottley*, 219 U. S. 479.

· Under the decision of *Released Rates*, 13 I. C. C. Rep. 560, the Interstate Commerce Commission holds to this construction of the Carmack Amendment, and that as a matter of contract the carrier cannot limit its liability for its negligence in whole or in part.

.. In passing this act, Congress had chiefly in mind to compel the carriers to be fair with the shipper and to prevent discrimination.

. Instead of the Federal statutes striking down state statutes and constitutions as to non-limitation of liability by conflict therewith, it exhibits no conflict and is in perfect accord with those of the Iowa and Nebraska type.

The carrier cannot, because it filed with the Commission a rate proportioned upon a declared valuation, in this case, shield itself from full liability for loss caused by it.

There is no Federal decision upon this point, but see *Cramer* v. *C., B. & Q. Ry. Co.*, 133 N. W. Rep. (Ia.) 388; *Railway Co.* v. *Pew*, 64 S. E. Rep. (Va.) 35.

The question of value as a basis of rates is no more a subject of contract than any other feature tending to make freight rates fixed and certain and to prevent discrimination. The value must be the true value or so near such as to stamp the proceedings with *bona fides*. The Federal statutes provide that there shall be no false classification and no false billing. It further provides for penalties for false classification and false billing whether done knowingly or not. To charge a rate upon a false value is to fix a false classification. Such a rate forbidden by law would bind neither carrier nor shipper. *T. & P. Ry. Co.* v. *Mugg*, 202 U. S. 242; *Railway Co.* v. *Hefley*, 158 U. S. 98; *Texas & Pac. Ry. Co.* v. *Abilene Oil Co.*, 204 U. S. 431.

A provision for the limitation of liability unless it specifically so recites will not be construed to apply in the event of negligence on part of the carrier. This principle applies in the construction of the schedules made, offered and filed by the carrier. The salutary principle that the carrier should not escape the consequence of its negligence should not be lightly set aside and its language should not be interpreted to contravene the well-settled principles of public policy unless such interpretation is unavoidable. If the language of the schedules is not so interpreted and if the limitation of liability therein mentioned does not apply in the event of the negligence of the carrier, it is not a departure from the schedules filed when the carrier is held fully to such liability as arises from negligent conduct.

This case is not one which under the rule of the *Hart Case*, 112 U. S. 331, permits of a limitation of liability,

because, first, the alternative of rates offered is so arbitrary and unreasonable as to show a purpose of forcing an acquiescence on part of the shipper to the lower rate and thus to procure a limitation of liability; second, the value fixed is not fairly made, the variation from the true value being so great as to show bad faith and that the same was arbitrarily made for the purpose of obtaining a limitation of liability. *Released Rates*, 13 I. C. C. Rep. 565; *Cramer* v. *Railway Co.*, 133 N. W. Rep. (Ia.) 387.

A reasonable alternative of rates and an opportunity to contract with full common-law liability at a reasonable differential rate must be offered or the contract will be construed as unreasonable and void. *Railway Co.* v. *Cravens*, 38 Am. St. Rep. 230, and see note, 88 Am. St. Rep. 933; *L. & N. Ry. Co.* v. *Smith*, 134 S. W. Rep. 866; 6 Cyc. (Carriers), 401; 1 Hutchinson's Carriers, 427; *Southern Ry. Co.* v. *Jones*, 31 So. Rep. (Ala.) 501; *Railway Co.* v. *Henlein*, 23 Am. St. Rep. 578.

It cannot be said that the Carmack Amendment or any other Federal statute validates in terms a contract limiting liability for negligence of carriers. At most it can only be said that it does not forbid them. If then the question of estoppel is left for determination of principles of the common law, the state court may determine and apply these principles for itself. As long as the Federal statute is not in conflict with the law of the State, the latter remains operative and a carrier cannot limit its liability in the States of Iowa and Nebraska. The state statutes forbidding limitation of liability are enacted under the police power of the State, and so long as the state and Federal statutes are not in conflict both may stand. *Cramer* v. *Railway Co.*, 133 N. W. Rep. 387; *Railway Co.* v. *Solan*, 169 U. S. 98; *Railway Co.* v. *Hefley*, 158 U. S. 98; *Hennington* v. *Georgia*, 163 U. S. 299; *Bridge Co.* v. *Kentucky*, 154 U. S. 204; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691.

MR. JUSTICE LURTON delivered the opinion of the court.

The question in this case, as in *Adams Express Company* v. *Croninger*, just decided, is whether the provisions of § 20 of the act of February 4, 1887, as amended by the act of June 29, 1906, 34 Stat. 584, c. 3591, constitute an exclusive regulation of contracts for interstate shipments of property by railroad common carriers, superseding all state regulations upon the same subject.

The action in this case was to recover the full value of a stallion shipped from a point in Iowa to a point in Nebraska, under a valued live stock contract. The loss occurred in the State of Nebraska through the negligence of the carrier, and the suit was in a court of that State.

The receipt or bill of lading placed a value upon the animal of two hundred dollars, and was signed by the shipper's agent. It recited that the schedules of rates and regulations filed with the Interstate Commerce Commission provide alternative rates of charges proportioned to the value of the stock delivered for transportation, as declared by the shipper, and that the recovery of the shipper in case of loss or injury should not be in excess of the value thus agreed upon for the purpose of determining the rate.

The plaintiff's claim is that the stallion was in fact of the value of two thousand dollars, and that the limitation of recovery stipulated is void under a statute of Iowa, where the contract was made, and also illegal and invalid under a clause in the constitution of Nebraska, the State in which the loss occurred and of the forum.

The Company relies upon the provisions of the act of 1906 as an exclusive rule regulating every contract for an interstate shipment and declaring the liability of the carrier, and contends that the regulations provided by § 20 of that act operate to supersede the legislation of both Iowa and Nebraska, in so far as they applied to interstate shipments.

This defense was overruled in the trial court, and the agreement in the plaintiff's bill of lading limiting any recovery in case of loss or damage to the value declared for the purpose of obtaining the lower or alternative rate of freight, was held to be illegal both under the law of Iowa and Nebraska, and judgment was rendered for the full value of the animal. This judgment was affirmed by the Supreme Court of Nebraska, that court ruling that the case was controlled by the state regulations referred to, and that these regulations had not been superseded by acts of Congress regulating interstate commerce. For this the court cited and relied upon certain decisions by the Nebraska courts, and the cases of *Chicago, M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133, and *Pennsylvania Railroad* v. *Hughes,* 191 U. S. 477. Both of the cases decided by this court were decided prior to the extensive amendment of the act regulating interstate commerce of 1887 by the act of June 29, 1906.

In *Adams Express Co.* v. *Croninger,* just decided, *ante,* p. 491, we reached the conclusion that by the provisions of § 20 of the latter act Congress had manifested a purpose to take possession of the subject of the liability of a carrier by railroad for interstate shipments, and that the regulations therein had superseded all state regulations upon the same subject. This case is therefore controlled by that judgment.

It follows that the Supreme Court of Nebraska erred in applying to the contract here involved the provisions of the Iowa statute, and of the constitution of the State of Nebraska, and in refusing to apply the exclusive regulation prescribed by § 20 of the act of 1906, as that provision has been construed by this court in the *Croninger Case,* above referred to.

*The judgment is accordingly reversed and remanded for further proceedings not inconsistent with this opinion.*