## No. 8928.

### DENVER & RIO GRANDE RAILROAD COMPANY *v.* TEUFEL.

1. COMMON CARRIER—*Bill of Lading—Limitation of Value.* A common carrier who fails to deliver goods committed to him for carriage is responsible for no more than the value of the goods specified in the bill of lading. (Laws 1910 c. 5, sec. 8.)

   The provision of the statute reserving to the shipper "any remedy or right of action which he had under existing laws," does not impair the effect of the preceding provision limiting the carrier's liability to the value stated.

2. —— *Statement of Value by Shipper's Agent.* An agent having the authority to make shipment of goods has authority to make a statement of their value, even though he has no knowledge of the actual value.

   Like ignorance of the carrier's agent is immaterial.

*Error to Delta County Court, Hon. William W. Dingman, Judge.*

Mr. E. N. CLARK, Mr. G. A. LUXFORD, for plaintiff in error.

Mr. JOHN R. CHARLESWORTH, Mr. MORTIMER STONE, for defendant in error.

Mr. Justice Scott delivered the opinion of the court:

THIS action is by defendant in error to recover from plaintiff in error the sum of $203.00 for goods delivered to the carrier at Fort Collins, Colorado, for shipment to Delta, Colorado, and lost through the negligence of the carrier.

The case was tried to the court without a jury upon the following agreed statement of fact:

"1.  The defendant admits that a trunk belonging to plaintiff and described in bill of lading as set forth in defendant's answer herein was delivered to defendant company to be carried to Delta, Colorado; that at the time defendant received said trunk it did not know its contents or the value thereof.

2.  The defendant admits that when the said trunk arrived at Delta, Colorado, the points of its destination, the trunk was empty, and the defendant was therefore unable to deliver to the consignee certain goods, personal effects and chattels, which the plaintiff claimed to have placed in said trunk before delivering it for carriage to the defendant; the defendant admits that it has not paid anything to the plaintiff by way of settlement.

3.  The defendant admits that plaintiff was and is the owner of the goods, personal effects and chattels described in plaintiff's complaint.

4.  The plaintiff admits said trunk containing the goods, personal effects and chattels claimed by plaintiff was left by him, the plaintiff, in storage at Fort Collins, in the State of Colorado, and that he, the plaintiff, instructed one McMillin, proprietor of the storage house where said trunk was kept, to consign the same to the plaintiff, at Delta, Colorado, and that said trunk and contents weighed less than two hundred fifty pounds.

5.  The plaintiff admits that the aforesaid McMillin did consign said trunk containing said goods to Delta, Colorado, via the Colorado & Southern Railway Company, a common carrier, and to Denver, Colorado, and thence to Delta, Colorado, via the defendant's railroad.

6.  The plaintiff admits that the aforesaid McMillin did sign and execute a released valuation clause contained in the bill of lading, marked Exhibit A, and described in the further and separate answer of the defendant filed herein and accepted the same before shipment.

7.  The plaintiff admits that a higher rate of transpor-

tation, as provided by the published tariff then one file, would have been required to have been paid by him for the transportation of said trunk and contents, if the defendant had, or its agents had, known the alleged value of the contents, or if the aforesaid McMillin had not signed and executed the said released valuation clause at ten dollars per hundredweight, as is alleged in the further and separate answer of defendant filed herein.

8. The defendant admits that the defendant company has made an offer to confess judgment for the sum of twenty-five dollars and costs to date.

It is further stipulated that plaintiff may introduce testimony regarding the value of said property claimed to have been lost, and to whether or not it was placed in said trunk before shipment. It is further agreed between the parties that the bill of lading filed by the defendant herein may be introduced as evidence, and it is agreed that the court may take judicial notice that the defendant has filed its tariff rates with the proper authorities, and that the same constitutes notice to all parties shipping."

The court rendered judgment against the carrier for the full amount of the claim, $203.00.

It is clear that under the common law and under the decisions of this court a contract such as the one in question was not valid either as against the negligence of the company, or the value of the shipment, and that the actual value must control, and but for the Act of 1910, section 8, chapter 5, Session Laws 1910, the judgment should be affirmed. *Union Pacific Co. v. Stupeck*, 50 Colo. 151, 114 Pac. 646.

But since that cause of action arose, the legislature enacted the statute in question, which is quite identical in substance with the Carmack Amendment to the Interstate Commerce Law upon that subject. The provision of the Colorado statute is as follows:

"Every common carrier receiving property for transportation between points within this state shall issue a receipt, or a bill of lading, therefor, and shall be liable to the lawful

holder thereof for all loss, damage or injury to such property caused by it or by any common carrier to which such property may be delivered, or over whose lines such property may pass.

No contract, receipt, rule or regulation shall exempt such common carrier from liability in this section imposed, but the carrier shall not be responsible for any greater sum than the value as fixed in the contract, receipt or bill of lading, where such valuation is stated.

But nothing in this section shall deprive any holder of such receipt, or bill of lading, of any remedy or right of action which he has under existing law.

The common carrier issuing such receipt, or bill of lading, shall be entitled to recover from the common carrier on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage, or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

The Supreme Court of the United States has uniformly held this limitation in the Federal statute to be valid and has limited the amount of recovery in such cases to the value stated in the bill of lading. *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *C., B. & Q. R. R. Co. v. Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323; *Missouri, K. & T. Ry. Co. v. Harriman,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *Boston & Maine Ry. Co. v. Hooker,* 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450 Ann. Cas. 1915D 593; *Pierce Co. v. Wells Fargo & Co.,* 236 U. S. 278, 35 Sup. Ct. 351, 59 L. Ed. 576.

That a common carrier can not exempt himself from liability for its own negligence, or that of his servants, is so generally held as to become elementary. Neither does the Carmack amendment nor the Colorado statute attempt to disturb this principle. The Colorado statute, if anything, is more explicit in its terms confining recovery to the value

fixed in the bill of lading than is the Federal law, and provides:

"No contract, receipt, rule or regulation shall exempt such common carrier from liability in this section imposed, but the carrier shall not be responsible for any greater sum than the value as fixed in the contract, receipt or bill of lading, where such valuation is stated."

The language of this provision is clear and unambiguous and is plainly within the rule of the cases cited.

It is said in this case that there was no knowledge, either upon the part of the plaintiff's agent or the agent of the company, as to actual value, and therefore the agreement was arbitrary and for such reason may be avoided. But in the *Express Company case,* supra, it was held:

"That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50, unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission."

In the case of an interstate shipment, arising in this state, it was held by this court that the contract was controlled by the Act of Congress, and the construction of that act by the Federal Supreme Court was approved. *Appel Co. v. Platt,* 55 Colo. 45, 132 Pac. 71. In that case the recovery was limited to the value of the shipment as stated in the receipt, or bill of lading. We must construe a like statute of the state to be valid and binding on the parties, and hold in this case that the amount of recovery is fixed by the agreement in the bill of lading.

It is contended that the warehouseman who delivered the goods to the carrier was without authority to bind the plaintiff as to value by the acceptance of the receipt. But the authority of this agent to make the shipment is conceded. Indeed it is alleged in the complaint that the plaintiff delivered the goods to the carrier, and in the agreed state-

ment of fact, it is admitted that McMillin, the agent, delivered the goods under authority of plaintiff. If the agent had authority to make the shipment, it follows that he had authority to make the statement as to value.

The Colorado act contains the following provision:

"But nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

It is contended by counsel that this discloses that it was thus not the intention of the legislature to deprive the shipper of his then existing common law remedy against the carrier. But the provision is in the precise wording of a like provision of the Federal statute, and has been construed by the Supreme Court of the United States, contrary to the contention of defendant in error.

It was said of this clause in *Adams Express Co. v. Corninger,* supra, that:

"What this court said of the 22d section of this ACT of 1887 in the case of *Texas & P. R. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426, 51 L. Ed. 553, 27 Sup. Ct. Rep. 350, 9 Ann. Cas. 1075, is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in the 20th section, that it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the interstate commerce act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act. Again, it was said of the same clause, in the same case, that it could not in reason be construed as continuing in a shipper a common law right the existence of which would be inconsistent with the provisions of the act. In other words, the act can not be said to destroy itself."

The judgment is reversed.

Hill, C. J., and Garrigues, J., concur.