CLAUDE DUNLAP, Respondent, v. CHICAGO & ALTON RALWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1915.

1. **DAMAGES: Railroads: Negligence in Shipping.** The plaintiff sued to recover damages to two horses caused by the negligence of defendant. The horses were shipped from Fulton, Missouri, to Chicago, and found to be damaged on their arrival, but no notice in writing of such damage was given defendant within five days, as provided by the bill of lading; but plaintiff did give oral notice to the station agent, after he shipped them back to Fulton. *Held*, that when plaintiff permitted five days to pass after each horse was unloaded without compliance with the stipulation, he lost his right to recover and his subsequent exhibition of the injured animals to the station agent at Fulton, with a recital of the causes of the injuries, did not have the effect of restoring the lost right to him.

2. ————: **Interstate Commerce.** Where a stipulation for a notice in a bill of lading provides a reasonable time for giving it, the failure to give such notice is fatal to plaintiff's right to recover.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris*, Judge.

REVERSED.

*Scarritt, Scarritt, Jones & Miller* for appellant.

(1) The shipments having been from Fulton, Missouri to Chicago, Illinois, were interstate commerce

and governed by the Federal law. Hamilton v. Railroad, 177 Mo. App. 145. (2) The court erred in not holding that plaintiff's failure to give written notice within five days as provided by the shipping contracts, barred recovery. Hamilton v. Railroad, 177 Mo. App. 145. (3) The court erred in giving plaintiffs instructions on its own motion. Railroad v. Interstate Commerce Commission, 117 Fed. 963-964; Van Hatton v. Railroad, 81 Fed. 545; Coal Co. v. Railroad, 14 Interstate Commerce 86-90; Georgia Exchange v. Railroad, 20 Interstate Commerce 623-630. (4) The court erred in refusing defendant's instructions limiting the amount of recovery to the value as placed in the shipping contracts, and instruction number 7 on the notice feature. Adams Express Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314.

*Fauntleroy, Cullen & Hay* for respondent.

JOHNSON J.—This is an action against a common carrier for damages caused by negligence in the transportation of two horses shipped at different times and under separate contracts from Fulton, Missouri, to Chicago, Illinois.

In the first count of the petition a negligent injury to a horse valued by plaintiff at $350 and shipped June 20, 1912, is alleged and in the second damages are prayed for the negligent injury of a horse shipped June 25, 1912, and valued at $2000.

The answer pleads that defendant is an interstate carrier, that the shipments in question were interstate shipments governed by the laws of the United States, that they were made pursuant to the terms and conditions of shipping contracts filed with, and approved by, the Interstate Commerce Commission, and on a posted rate based on a declared valuation of $100 for each horse, and that under said contracts plaintiff is not entitled to recover because of his

failure to comply with a provision which required him to give defendant notice in writing of each injury within five days "after the live stock in question has been unloaded," and in no event is entitled to recover in excess of $100 for each horse, the value declared in the contracts and upon which the rate, in part, was based. The reply alleged that these contracts "were and are illegal and void and without consideration."

Plaintiff recovered judgment in the circuit court on the first count for $300, and on the second for $160, and defendant appealed.

The proof shows beyond question that each horse was shipped and carried under the terms and conditions of a written contract of a form filed with, and approved by, the Interstate Commerce Commission and on a rate duly filed, published and posted, which was based, in part, on the declared value of $100 for each animal. One of the provisions of the contract required that in the event of loss or damage to the horse during the transportation, plaintiff, within five days after it was unloaded at Chicago, should give notice in writing to defendant of his claim therefor, "and in the event of his failure so to do, said second party (plaintiff) hereby releases and shall be barred from all claims of any kind or character against said first party arising out of any injury or damage to said stock."

The horse first shipped was unloaded at Chicago, June 21, 1912, in an injured condition and the second horse was unloaded June 26th in like condition. No written notice or claim was given by plaintiff to defendant before July 11, 1912. Both horses were shipped back to Fulton early in July and the attention of the station agent of defendant at that place was called by plaintiff to the injuries the horses had sustained during their carriage to Chicago, but not until more than five days had elapsed from the date on which the last horse had been unloaded at Chicago.

In the view we entertain it will be necessary to discuss but one of the points urged by defendant against the judgment. These were interstate shipments, falling within the operation of the national laws relating to such shipments. The statutory and juridical rules and policies of this State relating to interstate commerce have been superseded by recent enactments of Congress which, as interpreted and applied in the decisions of the Federal courts, have become the only law of the land pertaining to interstate commerce and must be recognized and enforced by the courts of all the States. The Supreme Court of the United States has made it clear in a number of late decisions that the Interstate Commerce Act and its Amendments have complete and exclusive possession of the subject of the liability of the carriers of interstate commerce, and that this legislation must be interpreted and applied by State courts in conformity with the decisions of the Federal courts. [Adams Express Company v. Croninger, 226 U. S. 491; Railroad v. Miller, 226 U. S. 513; Railway v. Latte, 226 U. S. 519; Railway v. Carl, 227 U. S. 639; Railroad v. Harriman, 227 U. S. 657; Manufacturing Co. v. Railroad, 174 Mo. App. 184; Joseph v. Railway, 175 Mo. App. 18; McElvain v. Railroad, 176 Mo. App. 379; Hamilton v. Railroad, 177 Mo. App. 145; Johnson Grain Co. v. Railroad, 177 Mo. App. 194; Bailey v. Railroad, 184 Mo. App. 457, 171 S. W. 44.]

In the Federal decisions provisions for the giving of notice of injury, such as that in the contracts before us, are construed as reasonable and as being in the nature of a regulation as distinguished from a restriction of the carriers' common law liability, and in that view it is immaterial whether the shipping contract is in form and substance a general or a special contract supported by the consideration of a reduced rate. In McElvain v. Railroad, supra, the St. Louis Court of Appeals, in an action for negligent delay in

the transportation of a carload of mules between points in different States, said of a provision in the shipping contract that notice should be given in one day "after the delivery of such stock at destination." "It is quite clear that, under the rule of decision prevailing in the Federal courts, the clause here in question, in the contract of affreightment, must be held to be valid, and that a failure on the part of plaintiff to comply with it is fatal to a recovery. Such is the tenor of the decisions of the United States Supreme Court cited above, although the particular provision of the shipping contract here relied upon by defendant was not involved in any of these cases. However, the precise question was recently under consideration by the Circuit Court of Appeals of the Eighth Circuit in Clegg v. St. Louis, 203 Fed. 971, in which the court, through MUNGER, J., held the identical stipulation in a shipping contract to be valid, and that a failure to give the notice required by it was fatal to plaintiff's recovery."

And in the case of Johnson Grain Co. v. Railroad, supra, we said: "The stipulation for the filing of a written claim of loss within a specified and reasonable time, being in the nature of a reasonable regulation and not of a restriction of the carrier's common-law liability, loes not depend upon a special consideration, such as a reduced rate, but is an agreement that may be incorporated in a general form of bill of lading. [Ginn v. Transit Co., 85 Fed. 985; Ingram v. Weir, 166 Fed. 328; Railway v. Harriman, supra.] While it is true the Supreme Court in the case last cited was dealing with a reduced rate shipping contract we interpret the excerpt we have quoted from the opinion as approving the doctrine of those cases which hold that such contractual limitations should be classed as mere regulations. Our own courts have adhered to the opposite rule. [George v. Railroad, 214 Mo. 551.] But inasmuch as the Supreme Court of the United States have construed the Hepburn Act, as amended, to mean

that every question of the validity of stipulations in bills of lading covering interstate shipments is a Federal question, we must follow the rule obtaining in the Federal courts, though it is contrary to that heretofore recognized in the jurisprudence of this State.''

The Federal decisions do not recognize as applicable to interstate shipments the rule that such contractual provisions must be reasonably enforced and not applied in instances where the carrier, after the expiration of the stated time for notice, has undiminished opportunities for investigating the facts relating to the nature and extent of the alleged injury. That rule still obtains in this State in intrastate shipments. [Richardson v. Railroad, 149 Mo. 311; Holland v. Railroad, 139 Mo. App. 702; McKinstrey v. Railroad, 153 Mo. App. 546; Burns v. Railroad, 151 Mo. App. 573.] But the Federal courts hold that where a stipulation for notice provides a reasonable time for giving it, ''the failure to give the notice is fatal to plaintiff's right to recover.'' [Clegg v. Railroad, 203 Fed. 971, and cases cited.]

When plaintiff permitted five days to pass after each horse was unloaded without compliance with the stipulation, he lost his right to recover and his subsequent exhibition of the injured animals to the station agent at Fulton, with a recital of the causes of the injuries, did not have the effect of restoring the lost right to him. Formal written notice given at that time would have been unavailing and certainly informal oral information was just as ineffective.

The judgment is reversed. All concur.